One moment, Counselor. You may proceed, Mr. Dunn. Thank you, Your Honor. Good morning, Your Honors. My name is Michael Donahoe. I work for the Federal Defenders of Montana, and I'm here today on behalf of Mr. Sinerius. I think I'll take an unusual step here and maybe confront what I think is my weakness in the case, and that would be the relating to language in the statute. It would appear, I guess under that language, that Congress is attempting in some ways to broaden the ability to bring in the priors. And we just ask the Court to consider that the categorical approach does apply, so that, in other words, what I'm saying is the relating to language does not remove the need to use the categorical approach as the frame of reference, if that makes any sense. Well, assuming the categorical approach applies, wouldn't this prior crime fit within the definition, or at least within the notion of sexual abuse? Well, Your Honor, that's precisely what I want to get to. And I would strike what we seized on the Court's word, or Your Honor's word, the notion. It would be the same So we're going to have to interpret what those words mean. Exactly, Your Honor. And I think that's the point that I'm trying to get at here. And maybe it's a little wispy and it's not firmly established in my own mind. Maybe the Court could help me with that. But I'm suggesting that the imperative here, the Sixth Amendment imperative that generates from the categorical approach analysis is that we know what we're comparing it to, and we're trying to come up with a match. This relating to language seems to me to be some almost pernicious attempt to widen that analysis to the point where we can just kind of say, well, you know, this is in the ballpark. This prior is in the ballpark. And I'm suggesting that we can't do that.  There's a line of cases in this circuit that talks about the relating to language and how broad it is. And I'm saying if you applied those cases, we would lose. I recognize that. But that we can't because this particular analysis demands, this categorical approach analysis demands, that we fix our terms. Now, in this record, we did not fix our terms. There's no definition that Judge Lovell conceived of to compare the prior over and against the list of things in 2252A. It just doesn't happen. The record is devoid of what the actual facts were. The crime of sexual assault requires some contact, and it requires a lack of consent. Is that right? Correct. Right. I agree with that. But on top of the... It's kind of hard to believe that doesn't mean sexual abuse. Well, Your Honor, I would submit under Faza-Martinez that it's abuse is a fixed term. And the contact, at least under Montana, well, could mean something different. And that even if the Court doesn't believe categorically that this statute, this Montana statute, is overbroad, the record that we have here, if we move to the modified categorical approach, does not tell us what the facts were. The original information was interlineated. Granted, the facts weren't interlineated on the information, but there's enough in the record that you can see that there's some disagreement as to actually what the facts were. And I cite to the Court, I think it's E.R. 6, the State Court judgment, and there's a comment in a list of factors that the judge is, the sentencing judge is making. And he says something to the effect, and the factual basis that you offered for touching the young woman, the Court considers to be untrue. In fact, he says, I think the judge writes in, the comment is it's a bald-faced lie. Now, I point to that to suggest that there was disagreement up until the time of sentencing about what the facts were here. And if that's true, then we don't know exactly what they were. Sotomayor, are you telling us that we can go outside the categorical approach? No. I guess what I'm standing here arguing is, is that we absolutely can't. That we can't. We can't go outside the categorical approach. Yeah, well, then don't talk about false facts. Okay. That's fine. I mean, that's where I would rather leave it. I mean, this is an alternative argument. I'm saying that this Montana law, in the first instance, is clearly over-broad vis-a-vis the federal law. I want to say something, though. I'll let Judge Fletcher say it. Don't talk about it. I'm not sure everybody on the panel necessarily agrees that, you know, the modified categorical approaches doesn't apply. I'm just, I'm just, I'm just waving the yellow flag here, as well. I wanted him to be at least consistent. Yeah, I am trying to cover all my bases here. And if, I guess I'll sum up here a little bit. I'm trying to move in descending order here and first say that if any of your arguments are plugged into the notion that the relating to language absolves us from using the categorical slash modified categorical approach, I respectfully submit that's Sixth Amendment error. Because we'll start getting into areas where we will have to make determinations about facts instead of using precise definitions and making a match or not finding a match, whatever the case may be. The second argument is, is that under the categorical approach, this Montana law is clearly overbroad. And the third is, is that if we drop down and rely on the modified categorical approach, there's just no facts to prove up to progress. And the case should be remanded and he should be re-sentenced. Thank you. Roberts, I wanted to reserve your time, and we'll hear from the government. Thank you. Good morning, Your Honors. My name is Marsha Hurd, and I'm with the District of Montana. I handled this case below and assisted in writing the brief with my co-counsel, Eric Wolf. In this case, we have an issue regarding the prior conviction, and that is the only issue in this case. And even if you take Mr. Cenarius's position, which is that this record doesn't show facts from which we can make this determination, we believe that that's incorrect. We believe we went under any approach, whether you use the categorical approach, whether you use the modified categorical approach, and look at what actually happened in terms of the documents in this case. He makes an argument that the Montana sexual assault statute itself is overbroad, does not match up exactly with language that is used within the statute. I believe the definitions are aggravated sexual abuse and sexual abuse of a minor. But if you look at the most recent Supreme Court case decided in January on this very issue, they talk about the fact that a statute uses specific terms. And I'm referring, of course, to Duenas-Martinez. It says that to find that a state statute creates a crime outside the generic definition requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretic possibility, that the state would apply its statute to conduct that falls outside the generic definition of the crime. And it requires that a defendant point either to his own case or to other state court cases which, in fact, did apply it outside the generic definition. Now in this case, we have a much broader definition than in Taylor where it is burglary, or in even the Baza case where it talked about a crime of violence that is sexual abuse. In this case, the statute specifically says relating to. It doesn't say is. And it's much broader than the other statutes that have been interpreted in terms of the immigration case. What's your response to Mr. Donahoe's argument about the relating to? Well, I think the relating to shows that Congress intended that this be a broad statute, that this be a statute that covers basically the people that we would call convicted pedophiles in general, people who have a prior sexual conviction and not just identical to those in the statute that are listed. Because it lists specifically any felony under Chapter 109A. We know exactly what those are. It lists also, I believe, the travel statutes. And it lists also the transportation statutes, which could be with adults or with children. But then it says, and any State statute or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor reward. And I think that Congress was intending this to be a broader definition. And under Taylor, the definition is, is burglary. And I think it's a very different thing in this case. They were trying to get to something broader. They know how to say exactly, it's these definitions, as they've done in several other statutes. If you look at 2241C, which is a life imprisonment possibility, they specifically said it, where it would have been a Federal offense. And it shows those exact matches. Also under 3559C2B, consists of a Federal offense. And again, that's a life imprisonment statute. And I think under this statute, what Congress was getting to was to broaden the ability to have priors brought in, was to broaden the scope, rather than narrow the scope. And I think that that's an important thing to keep in mind in this case, is that specific language that's contained within this statute. Sotomayor, what he was convicted of was sexual assault. Yes, it was. That's what he pled guilty to. So should we deal with the fact that a minor was involved at all? Well, the statute that we were looking at to make him a recidivist for his conviction says, relating to aggravated sexual abuse, sexual abuse or abuse of sexual conduct involving a minor or ward. And so you're going to have to, I think you're correct, get to some kind of definition of those terms. But it's clear in this case that what he pled guilty to involved a minor. Same date, same initials. It's clear why. Because the source of the clarity. The source of the clarity, I think, is if you look at the documents. The information that was filed and then amended by interlineation, and the his change of plea form that he filled out, and the judgment. It sounds a little loosey-goosey. I think that's what Mr. Donahue was concerned about. See, now, I guess I don't see the looseness of it, because the charging document indicates R.D. and her age and the date that the crime occurred. His own handwritten change of plea indicates R.D. and the date that it occurred. But, counsel, we all know that sometimes something one is charged with isn't doesn't hold up and it's not what they're convicted of. Here, we don't know the circumstances, except there must have been some kind of a deal. They changed it to sexual assault. Right. But if we stick to sexual assault and look at the statute, which says it has to be without consent, and there has to be touching, is that adequate? Well, I think in this case it is, because there are two portions, if you look at that sexual assault statute, that show what the potential sentence is. And in this case, he was obviously convicted of the felony, not the misdemeanor, which, by its very terms, has to involve either age-related nonconsent, so a child, or violence. And those are, you know, those are very clear under the statute. He was not convicted of a misdemeanor involving an adult because of what his sentence was. That's also clear from the judgment. I think that we need to look at carefully the new Supreme Court case and what it is that they're telling us about looking at the categorical approach as narrowly as maybe we have been in the past. When you say the new Supreme Court case, which one? The new Supreme Court case is Duenas-Alvarez. Oh, okay. That was decided on January 17th of 2007. And we all just kind of tumbled to this new case recently, so it would not be in our briefs, because we briefed before that. But Duenas-Alvarez, the Supreme Court, again, dealt directly with the issue of Taylor and the categorical approach. And I believe it was a Ninth Circuit case. It was an immigration case where the defendant was given a 16-level enhancement. I believe it was in this case. No, this was the aiding and abetting case, where he was convicted of theft by aiding and abetting. And the Ninth Circuit did not apply the categorical approach, or they did, but they said it didn't qualify because of the aiding and abetting. And the United States Supreme Court basically has told us now in this case that we're to broaden our view of what we've been doing in terms of Taylor analysis, that when a defendant makes an argument about a State statute, then that that defendant needs to show that there is more than just an application of legal imagination to a State's language, that there must be a realistic probability about the conviction, not a theoretic possibility. Sotomayor, I suggest that we go and canvass the cases to see what applications have been made. Have you done that? In this case, we have not. And what it says is the defendant must show that, that the defendant must show that he must at least point to his own case or other cases in which the State courts, in fact, did apply the statute in this special manner. Should we allow the defendant to supply a supplemental briefing on that? Well, I think that's potentially an issue, because I think that Dwayne's carding is simply the case. If we were to consider it on that basis, I would think we would have to allow supplemental briefing. But I'm not sure we have to go there. And you may not need to. If you do wish to look at this new issue, it's certainly something that happened after we briefed, and Mr. Donahoe and I did discuss that this morning, that maybe supplemental briefing is called for. If you feel like we need to get to the point on this, define the issue that you're in terms of the requirement under the new Supreme Court case under Duanez-Alvarez that the defendant must show that either in his case or in generally in cases within the State in which the State court did, in fact, apply the statute outside the special manner that he argues. And so if that's the basis from which you're going to be deciding this case, then I think potentially briefing may be necessary. But we, you know, we can't get past the issue that this statute is very broad, relating to, and I think Mr. Donahoe has accurately characterized, relating to, has broadened this statute very much beyond those in Taylor and in the immigration cases. Are there no further questions? No further questions, counsel. Mr. Donahoe, you have some reserve time. Your Honor, on the question of supplemental briefing, I recognize that it could maybe help us here in some way. Frankly, I don't know just off the top of my head what we would come up with in terms of State cases that would analyze this statute and have applied it. I don't know that we're going to be able to do that. I don't know if that's where we wanted to go, but it had been applied in cases where there was no force, there was no real assault. Right. And I understand that, Your Honor. But I guess a facial reading of the statute respectfully tells us that it can be. That's not a fictitious or stretch, as it were. I think clearly here under Montana law, you can make the touching of the nape of a neck of a child or an adult, and if you derive sexual gratification from that touching, you could be guilty under this statute. And I just don't think that's far-fetched. It's open-ended. It talks about sexual or other intimate parts of the body which are undefined. This is clearly a very open-ended and broad statute. But in any case, under the categorical approach, or modified categorical approach, if we get to that, there are simply insufficient facts based on the papers that are in this record to indicate what this the factual basis for this plea was. And without that information, it's just impossible, given the over-breath of the statute in the first instance, to apply it to this. All right. Thank you, counsel. The case just argued will be submitted for decision. We will.
judges: B. Fletcher, O'scannlain, Tashima